[Cite as *State v. Dixon*, 2015-Ohio-3144.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
### No. 102335

---

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## STEVEN DIXON

DEFENDANT-APPELLEE

---

## JUDGMENT:
### AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-573583-A

**BEFORE:** McCormack, P.J., Blackmon, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** August 6, 2015

**ATTORNEYS FOR APPELLANT**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Mary McGrath
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Robert L. Tobik
Cuyahoga County Public Defender

By: Jeffrey Gamso
Assistant Public Defender
310 Lakeside Ave., Suite 200
Cleveland, OH   44113

TIM McCORMACK, P.J.:

{¶1} Plaintiff-appellant, the state of Ohio, appeals from the trial court's order of November 26, 2014, granting defendant-appellee, Steven Dixon's, motion to dismiss the indictment based on preindictment delay.   For the following reasons, we affirm.

{¶2} On April 19, 2013, Dixon was indicted for one count of rape in violation of R.C. 2907.02(A)(2) and one count of kidnapping in violation of R.C. 2905.01(A)(4). The date of the offense for each count was April 20, 1993.

{¶3} Dixon filed a motion for dismissal of the indictment based upon preindictment delay.   The trial court granted the motion to dismiss without a hearing. The state appealed the trial court's dismissal.   Upon appeal, this court reversed the trial court's decision and remanded the matter for an evidentiary hearing.   *See State v. Dixon*, 8th Dist. Cuyahoga No. 100332, 2014-Ohio-2185.

{¶4} Upon remand, the trial court held a hearing on November 6, 2014, on Dixon's motion for dismissal.   Following the hearing, the court issued an order granting Dixon's motion.   The court found that the preindictment delay of 20 years had caused actual and substantial prejudice to Dixon and there was no justifiable reason for the delay.   The court further found that Dixon's due process rights were violated.   The court dismissed the case.

{¶5} The state appealed the trial court's judgment, raising two assignments of error:

I.   The trial court erred in finding that appellee presented evidence establishing that he suffered actual and substantial prejudice as a result of preindictment delay.

II.   The trial court erred in finding appellant failed to produce evidence of a justifiable reason for delay and dismissing the indictment.

## Background Facts

{¶6}   In its order granting the dismissal, the trial court outlined the background facts as follows:

> The underlying facts of this case are not in dispute.   Defendant Steven Dixon was arraigned on May 1, 2013, on a two (2) count indictment charging one (1) count of rape and one (1) count of kidnapping.   The incident that forms the basis for these charges allegedly occurred on or about April 20, 1993.
>
> On October 8, 1992, Defendant Dixon was released from prison on an unrelated charge and placed on parole supervision.   On April 20, 1993, the Defendant had sexual relations with the alleged victim.   The victim called the police and stated that the Defendant raped her.   A rape kit was taken, and a few days later Defendant Dixon was arrested.   The alleged victim signed a "no prosecution" form, and the Defendant was released from jail. The Defendant was then brought before the parole authorities in two (2) separate hearings relative to these charges.
>
> On May 10, 1993, at his Pre-revocation On-Site Parole Hearing, probable cause was found to exist regarding the subject charges. At the hearing, Cleveland Police Officers testified along with the alleged victim and the Defendant's employer. On June 23, 1993, a Formal Parole Revocation Hearing was held.   Once again, the police officers testified, the alleged victim testified, witnesses for the defense testified, and the Defendant testified. During this hearing, the Defendant admitted to having sexual intercourse with the alleged victim. However, while she testified it was rape, the Defendant testified that the sexual intercourse was consensual.

As a result of this hearing, the panel found Defendant Dixon guilty. His parole was revoked, and he was sent back to prison for another two (2) years.

On April 10, 2013, the Cleveland Police Department received a CODIS [Combined DNA Index System] hit confirmation from the Federal Bureau of Criminal Investigation that they had made a preliminary association between a submitted rape kit and the Defendant. Upon receiving this "new" evidence, the State proceeded to indict the Defendant prior to the expiration of the 20-year statute of limitations.

### November 2014 Hearing

**{¶7}** At the November 2014 hearing, defense counsel asserted that Dixon has been substantially prejudiced by the 20-year delay in the filing of the indictment due to lost testimony due to the unavailability of certain witnesses. In support of this claim, defense counsel contended that two witnesses who previously testified at Dixon's parole revocation hearings are missing or are no longer available to testify at trial. Defense counsel also asserts that Dixon's own memory of events that occurred in 1993 have diminished and he is therefore unable to fully assist in his own defense.

**{¶8}** Referring to the parole revocation hearing summaries, counsel submitted to the court that Dixon's former girlfriend (and the mother of his adult daughter), Eloise Battista, cannot now be located. Battista testified at the revocation hearings that Dixon came home later than usual on the evening of the alleged rape and Dixon had not been

violent.[1]  Counsel conceded that the girlfriend's testimony, however, did not include any statement about Dixon's demeanor and whether or not he appeared "disheveled" and therefore would be speculative in that regard, if presented as a witness today.

{¶9}  Secondly, defense counsel submitted that Dixon's former employer, Norman Diamond, owner of Diamond Men's Store, passed away in November 2013. Diamond testified at the revocation hearings that he spoke with the alleged victim after the incident and the victim told Diamond that "she had feelings for [Dixon]" and "if she could not have [Dixon], no one would."  Diamond further testified that the alleged victim told him that the sexual encounter was "mutual with no force."  Diamond's son, Randall Diamond, testified at the hearing on Dixon's motion to dismiss that his father had been "very actively involved" in Dixon's welfare before he passed away.

{¶10}  Finally, defense counsel argued that Dixon's own memory has diminished in the last 20 years and, therefore, he is unable to assist in his own defense "by solid recollection of those events."  Counsel provided that although Dixon remembers "having consensual relations" with the alleged victim, he cannot remember the specific date of the incident.

{¶11}  In response, the state provided that a defendant must specifically demonstrate the exculpatory value of any alleged missing evidence in order to show actual and substantial prejudice and Dixon has not met his burden.  Specifically, the

---

[1]  The alleged rape occurred "on or about" April 20, 1993.  According to the parole board summary, however, Battista testified that "[Dixon] came home on April 19, 1993, late, and felt that the other days [he] came home on time."

state submitted that Dixon failed to show how Battista's testimony would have helped with his defense, arguing that Battista's purported testimony, as conceded by the defense, is speculative. It further noted that Battista's testimony was not relevant and did not provide an alibi for Dixon, because Battista's testimony at the parole revocation hearing concerned April 19, which was not the date of the alleged rape.

{¶12} The state also noted that it learned for the first time that Norman Diamond was deceased; however, it argued that Dixon's argument with respect to Diamond's testimony at the parole revocation hearings was, likewise, speculation. The state further submitted that Randall Diamond's testimony regarding his family's relationship with the alleged victim and Randall's own memory of the alleged victim fails to provide any specific, particularized, or non-speculative evidence demonstrating prejudice. Finally, the state provided that Dixon's own memory loss cannot establish prejudice, where Dixon claims the act was consensual but cannot remember any other details of the night.

{¶13} At this hearing, the state also submitted that its reason for the 20-year delay in prosecution was justified. It claimed that "new" evidence received in 2013 prompted the indictment: the DNA evidence received from the rape kit through the CODIS hit in April 2013 and the alleged victim's new willingness to prosecute.

{¶14} In support of its position, the state claimed that the 2013 CODIS hit provided the DNA of Dixon and the alleged victim, thus establishing the identity of both parties involved. The state also presented the testimony of Detective Christina Cottom. Detective Cottom testified concerning the Cleveland police department's policy regarding

a "no prosecution" form that existed in 1993, the time of the alleged rape. She testified that when a "no prosecution" form was signed by a victim, the case was held in abeyance, or effectively closed, and would not be prosecuted without the victim's cooperation. Under the current policies in place within the police department, Detective Cottom testified that the police department would attempt to encourage a victim to make a statement and discuss the case with the officers. Finally, the detective distinguished this case from a "cold" case, where "there is no one identified."

{¶15} There are several statements in this case that are associated with the alleged victim's reason for signing the "no prosecution" form. According to Detective Cottom, the parole revocation hearing summaries noted the alleged victim testified that she "[c]an't take time off from work. Just want him to stay away from [me] and my family." The detective also testified that the alleged victim indicated that someone from the state discouraged her from pursuing charges against Dixon. According to parole board documentation, Detective Gregory King of the Cleveland police department's sex crimes unit testified at the pre-revocation parole hearing that when he phoned the alleged victim regarding the incident, she reported that she was "unsure as to whether or not she wanted to prosecute," although the next weekend, she signed the form. At the formal parole revocation hearing, the alleged victim stated that she was concerned for the safety of herself and her daughter. Detective King also testified at the formal hearing that the alleged victim "did not want to go to all the trouble of pressing charges against the subject * * *. [S]he simply wanted to be left alone by Steve Dixon."

**{¶16}** According to the state, the alleged victim has "jumped back on board" and in the span of 20 years, she has changed her mind and will now cooperate with the investigation.

Law and Analysis

**{¶17}** On appeal, the state argues that Dixon has failed to show that he was substantially and actually prejudiced due to the 20-year delay in indictment. Specifically, the state claims that Dixon has failed to show how the lost witnesses' testimony was exculpatory and Dixon's own memory loss is insufficient evidence of prejudice. The state further argues that the trial court erred in finding that the state failed to produce evidence of a justifiable reason for the delay.

**{¶18}** A defendant's due process rights can be violated by preindictment delay under certain circumstances. *United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *United States v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law * * *." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

**{¶19}** Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden to show that he was substantially and actually prejudiced due to the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). The burden then shifts to the state to produce

evidence of a justifiable reason for the delay. *State v. Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 51, citing *Whiting* at 217. The due process inquiry therefore involves a balancing test by the court, viewing the prejudice to the defendant in light of the reasons for the delay. *Luck* at 154, citing *Lovasco* at 789-790.

{¶20} In reviewing preindictment delay, "[t]he determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *Walls* at ¶ 52, quoting *Marion* at 325. In making this assessment, courts must consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay. *Walls* at ¶ 52; *Luck* at 154.

{¶21} This court has previously established the standard for demonstrating actual prejudice as the "exculpatory evidence standard":

> [T]he defendant may not rely on speculation or vague assertions of prejudice. Proof of actual prejudice must be specific, particularized, and non-speculative. Therefore, in order to establish actual prejudice, the defendant must demonstrate the exculpatory value of the evidence of which he was deprived due to the delay.

(Citations omitted.) *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 11; *see also State v. McFeeture*, 8th Dist. Cuyahoga No. 100434, 2015-Ohio-1814; *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034; *State v. Clemons*, 8th Dist. Cuyahoga No. 99754, 2013-Ohio-5131. The defendant must therefore show "how lost witnesses and physical evidence would have proven the defendant's asserted defense." *Smith* at ¶ 26, citing *State v. Davis*, 7th Dist. Mahoning No. 05 MA 235, 2007-Ohio-7216, ¶ 17 ("Without proof of prejudice, meaning something which adversely affects [a

defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution.").

**{¶22}** In a recent en banc decision in *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, however, this court revised its approach to establishing actual prejudice. Relying on our decision in *State v. Mack*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-4817[2] (prejudice may be established by contending the delay resulted in the loss of witness testimony), we concluded that the appropriate standard for determining actual prejudice is "basic concepts of due process and fundamental justice." *Jones* at ¶ 47. In evaluating Jones's claim of prejudice under this standard, this court found Jones suffered actual prejudice where the following factors were considered: the case was being reviewed prior to trial and therefore lacked the benefit of the state's evidence against the defendant; the defendant's identity was known from the beginning; the case lacked physical evidence and essentially depended upon a credibility determination; the victim had not been located; a witness was unavailable; the state engaged in a minimal investigation before "closing" the case; and nothing occurred in the time between the initial investigation and the indictment 20 years later. *Jones* at ¶ 41-47. This court found that under these circumstances, where the state failed to take action for 20 years, "requiring Jones to demonstrate that any missing evidence or unavailable witness

---

[2] *Mack* is currently pending in the Ohio Supreme Court. *See State v. Mack*, Supreme Court No. 2014-2149.

testimony would have been exculpatory is simply violative of his due process rights." *Id.* at ¶ 46.

**{¶23}** Once a defendant has established actual prejudice, the state must produce evidence of a justifiable reason for delay in the commencement of prosecution. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 51; *Whiting*, 84 Ohio St.3d at 217, 702 N.E.2d 1199. A delay can be found to be unjustifiable

> when the state's reason for the delay is to intentionally gain a tactical advantage over the defendant, *see United States v. Marion*, [404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468], or when the state, through negligence o[r] error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased.

*Luck*, 15 Ohio St.3d at 158, 472 N.E.2d 1097. The length of delay will typically be the "key factor" in determining whether a delay caused by the state's negligence or error in judgment is justifiable. *Id.*

**{¶24}** In reviewing a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to the findings of fact made by the trial judge. *Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, at ¶ 23, citing *State v. Wade*, 8th Dist. Cuyahoga No. 90029, 2008-Ohio-4574, ¶ 45.

**{¶25}** Dixon claims that because of the substantial delay, he was prejudiced due to the unavailability of two witnesses, Eloise Battista and Norman Diamond, and his own faded memory. Regardless of the standard applied, we find the trial court did not err in finding Dixon suffered actual and substantial prejudice.

**{¶26}** We note, initially, that a defendant's own general assertion that he does not remember details of an event that occurred nearly 20 years ago does not, in and of itself, constitute actual prejudice. *Smith* at ¶ 26; *State v. Ricosky*, 5th Dist. Stark No. 2003CA00174, 2004-Ohio-2091, ¶ 15. However, in this case, Dixon does not rely on the mere passage of time and the deterioration of his own memory to demonstrate actual prejudice. Nor does he rely on vague assertions of prejudice. Rather, Dixon presented very specific evidence that was lost and how that lost evidence would have impacted the essence of his defense.

**{¶27}** Here, Dixon identified two witnesses who previously testified on his behalf at a pre-revocation parole hearing and a formal parole revocation hearing that were held within months of the alleged rape. He also established that both witnesses are now unavailable to testify 20 years later at trial.

**{¶28}** Battista, Dixon's former girlfriend and the mother of his child, testified concerning the timeliness of his arrival home on or about the night of the alleged rape compared with other nights. And while she did not provide specific testimony regarding Dixon's demeanor at that time, she did state that Dixon "had not been violent."

**{¶29}** Diamond, Dixon's employer at the time of the alleged rape, testified that he spoke with the alleged victim after the incident and the victim told Diamond that the sexual encounter with Dixon was "mutual with no force." He further testified that the alleged victim told him "she had feelings for [Dixon]" and "if she could not have [Dixon], no one would."

{¶30} The alleged victim reported that Dixon had forcible intercourse with her; however, Dixon testified at the formal parole revocation hearing that he had consensual sex with the alleged victim. Thus, the case against Dixon hinges on the victim's credibility. Battista's testimony that Dixon was not a violent person is therefore helpful to his defense. Even more relevant and therefore helpful to Dixon's defense is Diamond's testimony that the alleged victim told him the sex was mutual and no force was involved. Diamond's testimony directly supports Dixon's assertion that the sex was consensual and it undermines the alleged victim's testimony, thus providing valuable impeachment evidence. As such, the unavailability of Diamond's testimony would greatly impair Dixon's ability to create a defense. *See State v. Winkle*, 7th Dist. Mahoning No. 12 MA 162, 2014-Ohio-895.

{¶31} In light of the foregoing, we find that Dixon has demonstrated actual and substantial prejudice. He has identified two witnesses who are no longer available to testify on his behalf at trial. Additionally, he has provided very specific evidence the witnesses would have provided that might have helped in his defense.

{¶32} We further find that the trial court did not err in finding that the state failed to provide a justifiable reason for the 20-year delay in prosecution. Here, the state claims that "new" evidence received in 2013 — the DNA evidence received from the rape kit through the CODIS hit in April 2013 and the alleged victim's new willingness to prosecute — prompted the indictment and, therefore, its reason for the delay was justified.

**{¶33}** The state argues that it received a CODIS hit confirmation in April 2013, indicating for the first time that Dixon's DNA profile was found in the alleged victim's rape kit. A CODIS hit would establish the identity of the individual whose DNA was recovered from a victim. In this case, however, in April 1993, at the time the alleged victim reported that she had been raped, she identified the suspect as "Steve" and she provided the police with a license plate number, from which the police were able to identify the defendant and arrest him. According to parole board documentation completed in 1993, Dixon reported to his parole officer and testified at the revocation hearing that he had consensual sex with the alleged victim. The alleged victim, in fact, testified at Dixon's parole revocation hearing. The alleged perpetrator's identity is therefore not an issue, and the CODIS hit received in 2013 did nothing to advance a case that had been inactive for approaching 20 years. *Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, at ¶ 42.

**{¶34}** The alleged victim's decision not to further cooperate in 1993 is likewise insufficient justification for a 20-year delay in prosecution. Although the record contains a number of reasons cited by the alleged victim when she signed the "no prosecution" form, she did, in fact, agree to testify against Dixon within months of the alleged offense at Dixon's parole revocation hearing. Furthermore, there is no evidence that the state ever made an attempt to persuade or compel her testimony at any point in the nearly 20 years since reporting the alleged rape. Likewise, there is no evidence the state pursued any other avenue in the investigation. In fact, the state had considered the case

closed, for all intents and purposes, electing not to pursue the matter after Dixon's parole was revoked and he was returned to prison. Where the state effectively ceased the active investigation of this case in 1993 but later decided to commence prosecution upon essentially the same evidence that was available to it at the time that its active investigation was ceased, it is unjustified. *Luck*, 15 Ohio St.3d at 159, 472 N.E.2d.

{¶35} Therefore, in light of the failure to prosecute as evidenced by a nearly two-decades delay in prosecution and the actual and substantial prejudice Dixon suffered due to the substantial delay, we cannot find the trial court erred in finding no justification for the preindictment delay and in dismissing the charges.

{¶36} The state's assignments of error are overruled. The court's judgment dismissing on the basis of preindictment delay is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., and
ANITA LASTER MAYS, J., CONCUR