[Cite as *State v. Battiste*, 2015-Ohio-3586.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 102299

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JAYSON BATTISTE

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-13-579620-A

**BEFORE:** E.T. Gallagher, P.J., S. Gallagher, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 3, 2015

**ATTORNEYS FOR APPELLANT**

Robert L. Tobik
Cuyahoga County Public Defender

BY:    Cullen Sweeney
Assistant Public Defender
310 Lakeside Avenue
Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:    Maxwell Martin
Assistant Prosecuting Attorney
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

EILEEN T. GALLAGHER, P.J.:

**{¶1}** Defendant-appellant, Jayson Battiste ("Battiste"), appeals from his conviction for sexual battery, raising four assignments of error for review:

> 1.  Appellant's conviction for sexual battery is against the manifest weight of the evidence.
>
> 2.  The trial court violated appellant's due process rights when it excluded evidence of the victim's prostitution on the basis of Ohio's Rape Shield Act.
>
> 3.  The trial court committed reversible error and violated appellant's Fourteenth Amendment right to a fair trial when it improperly permitted the police detective to offer opinions on appellant's guilt.
>
> 4.  Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article 1, Section 10 of the Ohio Constitution.

**{¶2}** After careful review of the record and relevant case law, we affirm Battiste's conviction.

## I. Procedural and Factual History

**{¶3}** In November 2013, Battiste and codefendant, Michael Taylor ("Taylor"), were named in a four-count indictment charging them with one count of rape, in violation of R.C. 2907.02(A)(2); one count of attempted rape, in violation of R.C. 2907.02(A)(2) and 2923.02; one count of sexual battery, in violation of R.C. 2907.03(A)(3); and one count of kidnapping, in violation of R.C. 2905.01(A)(4). The charges stem from a report

of a sexual assault made by the complaining witness, D.T., in connection with events that occurred in July 2003.

{¶4} Prior to trial, the state filed a motion in limine seeking to prohibit Battiste from introducing evidence of D.T.'s prior sexual activity. The trial court granted the state's motion in limine to "preclude admission of evidence under Ohio's rape shield statute * * * insofar as it seeks to preclude evidence offered at trial by the defendant of D.T.'s prior sexual activity only to impeach her credibility."

{¶5} In September 2014, Battiste's case proceeded to a jury trial where the following evidence was adduced.[1] In July 2003, then 21-year-old D.T. attended the Cleveland Puerto Rican Festival with her friend T.J. The two friends walked around, listened to music, ate food, and D.T. consumed alcohol. D.T. estimated that she drank between three to six beers over the course of the day and was taking prescription medications during that time period. While at the festival, D.T. and T.J. met two men. D.T. could not remember the names of the men, but recalled that they were African American males around her age.

{¶6} Later that evening the men agreed to give D.T. and T.J. a ride home. D.T. could not remember what time it was when they left the festival but stated that it was "dark out." D.T. testified that T.J. was dropped off first, but that she did not remember

---

[1] The trial court originally ruled that the codefendants would be tried together, but trial commenced against Taylor separately when Battiste's attorney became ill. Taylor was found guilty of sexual battery in May 2014. This court affirmed Taylor's conviction in *State v. Taylor*, 8th Dist. Cuyahoga No. 101615, 2015-Ohio-2033.

seeing T.J. exit the vehicle because she had fallen asleep in the backseat during the car ride. According to D.T., the next thing she remembered was waking up in the backseat of the parked car with a man on top of her. At that point, her skirt was up, her underwear was missing, and the man was "having sex with [her]." D.T. clarified on the record that the man's penis penetrated her vagina. D.T. testified that she did not consent to sexual relations, and that she was unconscious when the man got on top of her. D.T. managed to get out of the car and used her cell phone to call a friend to pick her up. When she exited the car, she observed a second man standing outside the car.

{¶7} T.J. testified that she remembered meeting D.T. at the Cleveland Puerto Rican Festival in July 2003. She stated that she did not recall seeing D.T. drink that day, but confirmed that D.T. drank during that time period. Additionally, T.J. corroborated D.T.'s testimony that they met two men at the festival and accepted rides home from them later that evening. T.J. testified that she was dropped off first and did not recall D.T. being asleep at the time she exited the vehicle. T.J. first estimated that she arrived at her house around 8:00 p.m., but later testified that it was probably closer to 10:30 p.m.

{¶8} During her cross-examination, T.J. admitted that D.T. had previously stated that she "wouldn't mind selling her body for sex." However, on redirect, T.J. clarified that she recalled telling detectives that she had no reason to believe D.T. was planning to engage in prostitution that day.

{¶9} At approximately 1:00 p.m. the next day, D.T. had a friend take her to the Cleveland Clinic emergency room. During her initial examination, D.T. told medical personnel that she had been vaginally raped by two males. D.T. stated that she went

home after the sexual assault and washed her vaginal area before following a friend's encouragement to go to the hospital for treatment. She also indicated that she had consensual sex with her boyfriend approximately two days earlier.

{¶10} Dr. Jonathan Glauser, the treating physician, testified that he evaluated D.T. and collected evidence for a rape kit pursuant to hospital protocol. Dr. Glauser testified that D.T. did not have any vaginal trauma, physical injuries to any other part of her body, or "physical evidence of trauma that needed to be addressed." However, Dr. Glauser stated that is is not uncommon for a victim of a sexual assault to have no "obvious signs of trauma." According to medical records, D.T. was alert, cooperative and did not appear to be distressed. Dr. Glauser clarified that there is no uniform reaction amongst rape victims and that some victims react hysterically while others react calmly, or some manner between those extremes.

{¶11} D.T.'s case was assigned to Detective Rochell Bush ("Det. Bush") of the Cleveland Police Department. Following numerous attempts to contact and meet with D.T., Det. Bush determined not to go forward with the investigation based on D.T.'s lack of cooperation.

{¶12} In 2006, the case was assigned to Detective Christina Cottom ("Det. Cottom") after Battiste was identified as a possible suspect in this matter through the Combined DNA Index System ("CODIS") database. Det. Cottom testified that in the course of reopening her investigation she made contact with D.T. According to Det. Cottom, D.T. stated that she "could not remember, quite remember this rape, but would call back and set up an appointment to come down and give a statement." However,

D.T. never called to schedule an appointment, and Det. Cottom was unsuccessful in her subsequent attempts to contact D.T. As a result, the case was held in abeyance.

{¶13} In 2013, Taylor was identified as a possible suspect in this matter through CODIS. At that point, Det. Cottom contacted D.T. and scheduled a face-to-face meeting. On this occasion, D.T. was cooperative and came to Det. Cottom's office to provide a statement and to view two separate photo arrays. Det. Cottom testified that one of the purposes of showing D.T. the photo arrays was to eliminate any consensual sex partners from her investigation. Ultimately, D.T. was unable to identify Battiste or Taylor in the separate photo arrays.

{¶14} In the course of her investigation, Detective Cottom interviewed Battiste and showed him photographs of D.T. and T.J. Det. Cottom testified that Battiste "denied knowing either of the women, and informed me that he knows just about every woman that he's ever been with and still did not recognize either of the women." Battiste stated that he was Taylor's roommate in 2003 but denied ever having sex with a woman Taylor had sex with. Battiste further denied ever having sex with D.T.

{¶15} Forensic scientist, Heather Bizub, testified that in 2013, she compared the DNA samples obtained from Battiste and Taylor to the DNA sample found in D.T.'s rape kit. The semen found on the vaginal swabs from D.T. resulted in a mixture that was consistent with contributions from the victim, Taylor, Battiste, and at least one unknown individual.

{¶16} At the conclusion of trial, the jury found Battiste guilty of sexual battery. He was acquitted of the remaining charges. Subsequently, the trial court sentenced Battiste to a maximum prison sentence of five years.

{¶17} Battiste now appeals from his sexual battery conviction.

## II. Law and Analysis

### A. Manifest Weight of the Evidence

{¶18} In his first assignment of error, Battiste argues his conviction for sexual battery is against the manifest weight of the evidence.

{¶19} The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier of fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶20} Reviewing courts give great deference to the trier of fact. We do so because:

The fact-finder * * * occupies a superior position in determining credibility. The fact-finder can hear and see as well as observe the body language, evaluate voice inflections, observe hand gestures, perceive the interplay between the witness and the examiner, and watch the witness's reaction to exhibits and the like. Determining credibility from a sterile transcript is a Herculean endeavor. A reviewing court must, therefore, accord due deference to the credibility determinations made by the fact-finder.

*State v. Thompson*, 127 Ohio App.3d 511, 529, 713 N.E.2d 456 (8th Dist.1998).

{¶21} Battiste was convicted of a single count of sexual battery in violation of R.C. 2907.03(A)(3), which states:

No person shall engage in sexual conduct with another, not the spouse of the offender, when * * * [t]he offender knows that the other person submits because the other person is unaware that the act is being committed.

{¶22} In challenging the weight of the evidence supporting his conviction, Battiste maintains that D.T.'s testimony is "totally unreliable, contrary to common sense, and inconsistent with the testimony of her friend [T.J.]." In relation to the element of the crime requiring proof that the victim submits because he or she is "unaware that the act is being committed," Battiste argues that "it is preposterous to believe that a 21-year-old 'passed out' after drinking 3 to 6 beers over the course of several hours and remained unconscious * * * while two men had sex with her."

{¶23} After careful review of the record in its entirety, we are unable to conclude that this is the exceptional case in which the evidence weighs heavily against the conviction. The jury, as the trier of fact, was in the best position to weigh the credibility of D.T.'s testimony and was free to believe all or part of it. It is clear from the jury's finding of not guilty on the remaining charges that it carefully considered all relevant testimony and any inconsistencies when rendering its verdict. Defense counsel had the opportunity to cross-examine D.T. on the perceived inconsistencies with her time line and

version of the incident, including the events that took place after T.J. was dropped off at her home for the evening. While Battiste disputes D.T.'s testimony that she was "passed out" at the time the sexual conduct occurred, we must defer to the trier of facts assessment of her credibility with respect to that element of the offense. Accordingly, we cannot say the jury clearly lost its way, thus creating such a manifest miscarriage of justice that Battiste's sexual battery conviction must be reversed.

{¶24} Battiste's first assignment of error is overruled.

## B. Rape Shield Statute

{¶25} In his second assignment of error, Battiste argues the trial court violated his due process rights when it excluded evidence of D.T.'s sexual history, including her alleged reputation as a prostitute.

{¶26} R.C. 2907.02(D), commonly known as the rape shield statute, states in pertinent part:

> Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact not at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.

{¶27} The statute essentially prohibits the introduction of any extrinsic evidence pertaining to the victim's sexual activity, with limited exceptions. Ohio courts have recognized that application of the rape shield statute may not unduly infringe upon a defendant's constitutional right of confrontation, right to a fair trial, and right to present a

defense. *See State v. Young*, 8th Dist. Cuyahoga No. 92127, 2009-Ohio-5354; *State v. Gardner*, 59 Ohio St.2d 14, 17-18, 391 N.E.2d 337 (1979).

**{¶28}** To protect a defendant's constitutional rights, courts must "balance the state interest which the [rape shield] statute is designed to protect against the probative value of the excluded evidence." *Gardner* at 17. "The key to assessing the probative value of the excluded evidence is its relevancy to the matters as proof of which it is offered." *Id.*

**{¶29}** In *Gardner*, the Ohio Supreme Court found that "[e]vidence that [the] complainant had a reputation as a prostitute is not sufficiently probative of consent to outweigh the state's legitimate interests in excluding the testimony, *at least where there is no suggestion in the record that financial arrangements were entered into for sexual activities in this instance*." (Emphasis added.) *Id.* at 18. On the other hand, where the proffered evidence is offered for more than mere impeachment of credibility, and is directly probative of a material issue in the case, the evidence should not be excluded under the rape shield law. *State v. Williams*, 21 Ohio St.3d 33, 487 N.E.2d 560 (1986).

**{¶30}** In *State v. Ciacchi*, 8th Dist. Cuyahoga No. 92705, 2010-Ohio-1975, this court was asked to confront the limited exceptions to the rape shield statute and determine, under the specific facts of that case, whether evidence of the victim's solicitations for sex in exchange for money was offered merely to impeach the victim's credibility or whether it was directly probative of the element of consent. In *Ciacchi*, the defendant testified that the victim propositioned him on the street and that he went to her apartment after paying her $20 for oral sex. *Id.* at ¶ 18. However, the trial court prevented the defendant from providing further details of the conversation that occurred

on the street and inside the victim's apartment. Applying the case law set forth in *Gardner*, this court reversed the defendant's conviction and ordered a new trial, finding that the evidence was "not precluded by Ohio's rape shield law" because the victim's statements soliciting sex for money on the street and the victim's statements made at her apartment were "directly related to the specific sexual encounter at issue in the case." *Id.* at ¶ 24. Thus, the testimonial evidence went directly to the issue of consent. *Id.*

{¶31} After careful review of the record, we find *Ciacchi* to be factually distinguishable. In the case at hand, there is nothing in the record to suggest that a financial arrangement was entered into between D.T. and Battiste. To be fair, T.J. indicated that she was aware D.T. may have exchanged sex for money in the past. However, with respect to this specific instance, T.J. confirmed during her redirect examination that there was nothing that led her to believe D.T. was planning to, or in fact did, exchange sex for money on the night of the incident. Additionally, D.T. adamantly denied defense counsel's repeated accusations that she engaged in sex for money or drugs.

{¶32} Thus, unlike the circumstances of *Ciacchi*, there is nothing in the record, nor was there any testimony presented, to suggest that prostitution was involved in the specific sexual encounter at issue in this case. In fact, Battiste denied ever having sex with D.T., in exchange for money or otherwise, during his interview with Det. Cottom. Thus, evidence of D.T.'s prior sexual activity would serve only to impeach her credibility, which is precisely the type of evidence R.C. 2907.02(D) was created to preclude. *See State v. Williams*, 21 Ohio St.3d 33, 36, 487 N.E.2d 560 (1986). As stated in *Gardner*,

without specific evidence indicating a suggestion of a sexual agreement for money in relation to Battiste's interaction with D.T., evidence of D.T.'s past prostitution conviction was not sufficiently probative of consent to outweigh the interests in excluding the evidence.

{¶33} Furthermore, we find no merit to Battiste's argument that the state "opened the door" for defense counsel to introduce evidence of D.T.'s prior prostitution conviction once it elicited testimony from T.J. that she had no reason to believe D.T. was planning to engage in sex with either of the men who drove her home on the evening of the sexual assault. Battiste correctly states that a party may use relevant information to rebut the inference arising from evidence when a party opens the door to otherwise inadmissible evidence. *State v. Jackson*, 57 Ohio St.3d 29, 565 N.E.2d 549 (1991). However, in our view, evidence of D.T.'s sexual history would not rebut T.J.'s narrow testimony concerning what she personally observed on the night of the incident.

{¶34} Battiste's second assignment of error is overruled.

### C. Opinion Testimony

{¶35} In his third assignment of error, Battiste argues the trial court committed reversible error and violated his Fourteenth Amendment right to a fair trial when it improperly permitted the police detective to offer opinions on his guilt.

{¶36} Generally, "the opinion of a witness as to whether another witness is being truthful is inadmissible." *State v. Dzelajlija*, 8th Dist. Cuyahoga No. 88805, 2007-Ohio-4050, ¶ 34, citing *State v. Boston*, 46 Ohio St.3d 108, 128, 545 N.E.2d 1220 (1989). "In our system of justice, it is the fact finder, not the expert or lay witness, who

bears the burden of assessing the credibility or veracity of a witness." *Id.*, citing *State v. Eastham*, 39 Ohio St.3d 307, 312, 530 N.E.2d 409 (1988).

{¶37} The testimony in question occurred when Det. Cottom was discussing the photo array she prepared for D.T. in the course of her investigation. Specifically, Battiste challenges Det. Cottom's statement that the identity of the "assailant" in this case was not at issue due to the DNA evidence collected from D.T.'s rape kit:

Q. And what was the purpose of the office visit?
A. Again, it's to obtain further information, to see if [D.T.]'s able to recall, if she can give me any leads, any names, license plates, description of the car.

Q. Now, you already know the identities of the two assailants at this point; is that correct?

A. Yes, I do.

Q. So are you relying on her necessarily to lead you in the direction of solving who did this?

A. No. At this point in time, I know who did it, so I would prepare a photo spread for her to see if she could identify through photographs.

{¶38} Battiste's counsel failed to object to this portion of Det. Cottom's testimony at trial, and therefore, he has waived all but plain error. *State v. Jones*, 91 Ohio St.3d 335, 343, 744 N.E.2d 1163 (2001); *State v. Tibbs*, 8th Dist. Cuyahoga No. 89723, 2008-Ohio-1258, ¶ 9. Plain error exists where, but for the error, the outcome of the trial clearly would have been different. *Tibbs* at ¶ 9. Appellate courts find plain error only in exceptional circumstances where it is necessary to prevent a manifest miscarriage of justice. *Id.*

{¶39} By permitting Det. Cottom to refer to Battiste as the person "who did it," Battiste argues the trial court violated the well-established prohibition against witness bolstering and denied him a fair trial. However, read in the context of Det. Cottom's

entire testimony, we are unable to conclude that Det. Cottom was offering an opinion as to the truthfulness of D.T.'s accusations or to the guilt or innocence of Battiste. Instead, Det. Cottom was merely explaining that Battiste and Taylor were the only two individuals being investigated for the crimes based on the available DNA evidence. Accordingly, we conclude that the admission of Det. Cottom's testimony did not amount to error, plain or otherwise.

**{¶40}** Battiste's third assignment of error is overruled.

### D. Ineffective Assistance of Counsel

**{¶41}** In his fourth assignment of error, Battiste argues he was denied effective assistance of counsel based on defense counsel's (1) failure to object to the Det. Cottom's improper opinion testimony, and (2) failure to file a motion to dismiss due to prejudicial preindictment delay.

**{¶42}** The test for ineffective assistance of counsel requires a defendant to prove "(1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defendant." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In reviewing a claim of ineffective assistance of counsel, we examine whether counsel's acts or omissions "were outside the wide range of professionally competent assistance" and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. To establish the second element, the defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

"The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on has having produced a just result." *Id*. at 686.

{¶43} Based on our resolution of Battiste's third assignment of error, defense counsel did not render ineffective assistance of counsel by failing to object to Det. Cottom's reference to Battiste as the "assailant." As stated, Det. Cottom was not testifying to D.T.'s veracity and an objection would have proven unsuccessful.

{¶44} Moreover, with respect to Battiste's second basis for claiming ineffective assistance of counsel, we believe that a motion to dismiss for preindictment delay would have been equally unsuccessful.

{¶45} A defendant's due process rights can be violated by preindictment delay under certain circumstances. *U.S. v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971); *U.S. v. Lovasco*, 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). "An unjustifiable delay between the commission of an offense and a defendant's indictment therefor[e], which results in actual prejudice to the defendant, is a violation of the right to due process of law * * *." *State v. Luck*, 15 Ohio St.3d 150, 472 N.E.2d 1097 (1984), paragraph two of the syllabus.

{¶46} Courts apply a two-part test to determine whether preindictment delay constitutes a due process violation. The defendant has the initial burden to show that he was substantially and actually prejudiced due to the delay. *State v. Whiting*, 84 Ohio St.3d 215, 217,702 N.E.2d 1199 (1998). The burden then shifts to the state to produce evidence of a justifiable reason for the delay. *State v. Walls*, 96 Ohio St.3d 437,

2002-Ohio-5059, 775 N.E.2d 829, ¶ 51, citing *Whiting* at 217. The due process inquiry therefore involves a balancing test by the court, viewing the prejudice to the defendant in light of the reasons for the delay. *Luck* at 154, citing *Lovasco* at 789-790.

{¶47} In reviewing preindictment delay, "[t]he determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *Walls* at ¶ 52, quoting *Marion* at 325. In making this assessment, courts must consider the evidence as it exists when the indictment is filed and the prejudice the defendant will suffer at trial due to the delay. *Walls* at ¶ 52; *Luck* at 154.

{¶48} This court has previously established the standard for demonstrating actual prejudice as the "exculpatory evidence standard":

> [T]he defendant may not rely on speculation or vague assertions of prejudice. Proof of actual prejudice must be specific, particularized, and non-speculative. Therefore, in order to establish actual prejudice, the defendant must demonstrate the exculpatory value of the evidence of which he was deprived due to the delay.

(Citations omitted.) *State v. Thomas*, 8th Dist. Cuyahoga No. 101202, 2015-Ohio-415, ¶ 11; *see also State v. McFeeture*, 8th Dist. Cuyahoga No. 100434, 2015-Ohio-1814; *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034; *State v. Clemons*, 8th Dist. Cuyahoga No. 99754, 2013-Ohio-5131. The defendant must therefore show "how lost witnesses and physical evidence would have proven the defendant's asserted defense." *Smith* at ¶ 26, citing *State v. Davis*, 7th Dist. Mahoning No. 05 MA 235, 2007-Ohio-7216, ¶ 17 ("Without proof of prejudice, meaning something which adversely affects [a defendant's] ability to defend himself at trial, there is no due process violation for preindictment delay in prosecution.").

{¶49} In a recent en banc decision in *State v. Jones*, 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, however, this court revised its approach to establishing actual prejudice. Relying on our decision in *State v. Mack*, 8th Dist. Cuyahoga No. 100964, 2014-Ohio-4817 (prejudice may be established by contending the delay resulted in the loss of witness testimony), we concluded that the appropriate standard for determining actual prejudice is "basic concepts of due process and fundamental justice." *Jones* at ¶ 47. In evaluating Jones's claim of prejudice under this standard, this court found Jones suffered actual prejudice where the following factors were considered (1) the case was being reviewed prior to trial and therefore lacked the benefit of the state's evidence against the defendant, (2) the defendant's identity was known from the beginning; the case lacked physical evidence and essentially depended upon a credibility determination, (3) the victim had not been located, (4) a witness was unavailable, (5) the state engaged in a minimal investigation before "closing" the case, and (6) nothing occurred in the time between the initial investigation and the indictment 20 years later. *Jones* at ¶ 41-47. This court found that under these circumstances, where the state failed to take action for 20 years, "requiring Jones to demonstrate that any missing evidence or unavailable witness testimony would have been exculpatory is simply violative of his due process rights." *Id*. at ¶ 46.

{¶50} Once a defendant has established actual prejudice, the state must produce evidence of a justifiable reason for delay in the commencement of prosecution. *Walls*, 96 Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, at ¶ 51; *Whiting*, 84 Ohio St.3d at 217, 702 N.E.2d 1199. A delay can be found to be unjustifiable when the state's reason

for the delay is to intentionally gain a tactical advantage over the defendant, *see U.S. v. Marion*, 404 U.S. at 324, 92 S.Ct. 455, 30 L.Ed.2d 468, or when the state, through negligence or error in judgment, effectively ceases the active investigation of a case, but later decides to commence prosecution upon the same evidence that was available to it at the time that its active investigation was ceased. *Luck*, 15 Ohio St.3d at 158, 472 N.E.2d 1097. The length of delay will typically be the "key factor" in determining whether a delay caused by the state's negligence or error in judgment is justifiable. *Id.*

{¶51} In this case, Battiste asserts that he was prejudiced by (1) his faded memory, (2) the faded memories of D.T. and T.J., and (3) the inability to locate the individual who took D.T. to the hospital. With respect to Battiste's argument concerning the witnesses' faded memories, we find there is nothing in the record to suggest Battiste was prejudiced by D.T. and T.J.'s inability to recall certain details of the incident. In fact, defense counsel frequently utilized D.T.'s inability to recall details to Battiste's advantage throughout trial, including closing arguments where counsel stated, "don't you think you would remember something about someone who raped you?"

{¶52} Furthermore, Battiste did not testify at trial. Therefore, this court has no basis to review whether his impaired memory prejudicially impeded the "basic concepts of due process and fundamental justice." *See State v. Dixon*, 8th Dist. Cuyahoga No. 102335, 2015-Ohio-3144, ¶ 26, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 26 ("a defendant's own general assertion that he does not remember details of an event that occurred nearly 20 years ago does not, in and of itself, constitute actual prejudice.").

**{¶53}** Similarly, there is nothing in the record to suggest that defense counsel's inability to locate the individual who took D.T. to the hospital deprived him of due process or fundamental justice. Within his brief, Battiste contends that he was unable to rebut the state's theory that D.T. was "passed out" at the time of the sexual battery because he was unable to question the missing witness about D.T.'s physical and emotional condition prior to arriving at the hospital. In addition to speculating as to what the missing witness would have testified, such evidence would have been cumulative to much of the rebuttal testimony defense counsel elicited during the cross-examination of D.T., T.J., and Dr. Glauser concerning D.T.'s level of sobriety and physical condition during the relevant time periods.

**{¶54}** Based on these facts, Battiste has failed to demonstrate actual prejudice pursuant to the standard set forth in *Jones*. As such, we find that Battiste has failed to prove that his trial counsel's failure to file a motion to dismiss for preindictment delay constituted ineffective assistance of counsel. Even if we assume, arguendo, that trial counsel's representation fell below an objective standard of reasonableness as a result of his failure to file a motion to dismiss, Battiste has not established he was prejudiced as a result of his trial counsel's alleged ineffectiveness or a reasonable probability that the result of the proceeding would have been different had the motion been filed. *See Strickland* 466 U.S. 668, at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶55}** Battiste's fourth assignment of error is overruled.

### III. Conclusion

**{¶56}** Battiste's sexual battery conviction was supported by the manifest weight of the evidence. Furthermore, the trial court did not err by excluding evidence of the victim's prior sexual history pursuant to R.C. 2907.02(D). Finally, defense counsel was not deficient for failing to file a motion to dismiss based on preindictment delay or by failing to object to portions of testimony provided by the state's witnesses.

**{¶57}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


EILEEN T. GALLAGHER, PRESIDING JUDGE

PATRICIA ANN BLACKMON, J., CONCURS;
SEAN C. GALLAGHER, J., CONCURS (WITH SEPARATE OPINION ATTACHED)


SEAN C. GALLAGHER, J., CONCURRING:

**{¶58}** I concur fully with the judgment and analysis of the majority. I write separately to address my ongoing opposition to the holding of the majority in our recent

en banc decision in *State v. Jones,* 8th Dist. Cuyahoga No. 101258, 2015-Ohio-2853, discussed in ¶ 48 of the opinion.

{¶59} Although the majority here correctly distinguishes *Jones* from the facts at play in this case, I nevertheless continue to believe *Jones* was wrongly decided and has minimal precedential value. *Jones* effectively watered down the first prong of the long-standing preindictment delay standard outlined by the majority. Further, *Jones* failed to even address the second prong of that test.

{¶60} This case also points out the unworkable and inherently inconsistent approach *Jones* brings to preindictment delay analysis. Under *Jones*, speculation and dubious claims of missing or lost evidence create a "due process and fundamental right" standard replacing the traditional "exculpatory evidence" standard.