[Cite as *State v. Chavez*, 2013-Ohio-4700.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99436

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## JEROME CHAVEZ

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-559900

**BEFORE:** E.A. Gallagher, J., Celebrezze, P.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** October 24, 2013

**ATTORNEYS FOR APPELLANT**

Eric Dysert
Marcus S. Sidoti
Jordan & Sidoti, L.L.P.
50 Public Square
Suite 1900
Cleveland, Ohio   44113

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:     Jeffrey S. Schnatter
          Yosef M. Hochheiser
Assistant County Prosecutors
The Justice Center, 8th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, J.:

{¶1} Jerome Chavez appeals his conviction and sentence that were rendered in the Cuyahoga County Common Pleas Court. Chavez argues that the state failed to support his convictions with sufficient evidence, that his convictions are against the manifest weight of the evidence, that the trial court erred in failing to appoint new counsel and, when it imposed sentence. For the following reasons, the judgment of the trial court is affirmed.

{¶2} On February 17, 2012, M.C., born March 16, 1997, informed her high-school counselor that her father, Jerome Chavez had been sexually abusing her. That same day, police officers arrested Chavez and interviewed M.C.'s brothers and sisters. The officers learned that Chavez had sexually abused five of his six children, H.C., born December 10, 1995, M.C., J.T.C., born November 30, 1998, K.C., born April 15, 2000, and J.J.C. born August 20, 2001, over the course of many years. Chavez has a younger daughter, born March 3, 2005, but she never reported any sexual abuse. The children's mother, Traci Schmidt, lived in the various homes with Chavez and their six children during the period of abuse.

{¶3} The Cuyahoga County Grand Jury returned a 36-count indictment charging Chavez with 11 counts of rape pursuant to R.C. 2907.02(A)(1)(b), where the victim was less than 13 years old (Counts 1, 4, 6, 15, 17, 19, 21, 22, 24, 26 and 35); eight counts of rape pursuant to R.C. 2907.02(A)(2) by purposely compelling the victims to submit by force or threat of force (Counts 8-11, 28, 29, 31, 33); three counts of rape pursuant to

R.C. 2907.02(A)(1)(a), by substantially impairing the victim's judgment by administering a drug, intoxicant or controlled substance (Counts 13, 14 and 16); thirteen counts of kidnapping pursuant to R.C. 2905.01(A)(4) (Counts 2, 5, 7, 12, 18, 20, 23, 25, 27, 30, 32, 34 and 36) and one count of disseminating matter harmful to juveniles pursuant to R.C. 2907.31(A)(3) (Count 3). All charges of rape contained a sexually violent predator specification and count 26 also contained a sexual motivation specification. All charges of kidnapping contained both sexual motivation and sexually violent predator specifications.

{¶4} Chavez elected to proceed to a bench trial and the state elicited the testimony of the five children as well as the testimony of Parma Police Officer Jonathan Kaniecki, Detective Daniel Heinz, Detective David Sheridan, Christopher Smith of the Bureau of Criminal Identification and Philip Christopher of the Cuyahoga County Sheriff's Department.

{¶5} Counts 1-7 relate to acts perpetrated upon Chavez's youngest son, J.J.C., who testified regarding three separate incidents of sexual contact. In the middle of July 2010, before his 10th birthday, J.J.C. stated that his father called him to the basement of their home on Gerald Avenue in Parma, Ohio, where he had J.J.C. watch pornographic movie clips. J.J.C. testified that his father then turned off the videos and had the child perform oral sex upon him.

{¶6} Approximately one month later, when J.J.C. was nine years old and the family lived on Gerald Avenue, his father called both him and K.C. downstairs to his

bedroom. Once both J.J.C. and K.C. were downstairs, Chavez had both minors watch a pornographic video on the computer. Chavez told J.J.C. and K.C. to do to him what the people on the video were doing to each other. J.J.C. testified that he and his sister K.C. took turns performing oral sex on their father. J.J.C. stated that it stopped either when he asked if they could stop or when the "white stuff" came out.

{¶7} Additionally, J.J.C. testified that sometime after Halloween but before Thanksgiving, 2011, when he and his family lived at 7803 Pelham Drive in Parma Ohio, he was playing video games downstairs when he heard his father call him upstairs to the father's bedroom. J.J.C. stated that when he got to his father's room, Chavez showed him an internet video of a woman performing oral sex on an adult male. J.J.C. testified that his father asked him to perform the act depicted in the video and he complied. The child stated that his father used his hand to push J.J.C.'s head towards his private part and that J.J.C. used his opened mouth and hands on Chavez's penis until appellant ejaculated.

{¶8} Counts 8-16 relate to sexual acts perpetrated upon M.C., the child who initially alerted her school guidance counselor about the abuse. M.C. testified that on the Sunday immediately before her disclosure, while she lived at 7803 Pelham Drive, she was in her father's bedroom with the door closed. M.C. stated that her father had her stand up and put her hands against the wall with her back towards him. Chavez removed her shirt and blindfolded her using that shirt and he then digitally penetrated her. M.C. testified that Chavez pulled her down onto a mattress and performed oral sex

on her and then engaged in vaginal intercourse with her.

{¶9} M.C. testified that her father first started touching her sexually in 2006 when they lived on Wainstead Avenue in Parma, Ohio. On that occasion, he made M.C. put on her Halloween costume that consisted, in part, of fishnet stockings. M.C. testified that Chavez cut a hole in the crotch of the stockings and instructed her to stand over a mirror so that she could see between her legs. M.C. stated that her father then placed her on his lap, spread her legs and made her watch as he put his fingers inside of her vagina.

{¶10} M.C. stated that her father first had sex with her when she was in the sixth grade and the family lived on Gerald Avenue. M.C. testified that she was on the main floor of the home when her father called her downstairs to his bedroom. Chavez took M.C. into the downstairs bathroom and he shut and locked the door. M.C. testified that Chavez shaved her pubic region then had her lay on her stomach on the bathroom floor while he got on top of her. Chavez raised her hips and forced his penis inside of her vagina. M.C. testified that this caused her a lot of pain and bleeding.

{¶11} Counts 17-23 relate to the sexual acts perpetrated against K.C., who testified that sometime during February 2012, she was outside playing when her father called her into the home on Pelham Drive and up into his bedroom. K.C. stated that her father began watching pornography and had her perform oral sex on him until he ejaculated into her mouth. Her father then told K.C. to go into the bathroom and spit it out.

{¶12} K.C. stated that her father began first abusing her sexually when she was six or seven years of age and the family lived on Wainstead Avenue. She testified that her father called her into his bedroom and showed her a pornographic video. K.C. stated that her father had her perform oral sex on him by asking her to do to him what the people in the video were doing.

{¶13} Counts 24-27 address the sexual abuse of J.T.C. J.T.C. testified that while he could not remember a specific incident of abuse while on the witness stand, he did remember speaking to a social worker and the police detectives and that he told them the truth. The trial court permitted the state to play a recording showing J.T.C. telling the social worker and detective how, after his coach made him the captain of his football team, his father called him into his bedroom on Pelham Drive and showed him a pornographic video. Chavez then asked J.T.C. to do to him what the people on the video were doing and J.T.C. performed oral sex on his father.

{¶14} J.T.C. also testified to an incident when he lived on Gerald Avenue and his father called him downstairs where his sister, M.C., who was naked, was already performing oral sex on Chavez. J.T.C. testified that when M.C. stopped performing oral sex on Chavez, he performed oral sex on his father.

{¶15} Counts 28-36 relate to the sexual abuse of H.C., the eldest of the Chavez children. H.C. testified to an incident when she and her family lived at 7803 Pelham Drive and her father told her that he was going to keep her home from school so that they could have sex. H.C. testified that her father gave her marijuana, which they smoked

together and then he had vaginal intercourse with her. H.C. testified to another incident wherein Chavez took her virginity. H.C. stated that she and her father were together in the living room in their home on Gerald Avenue when he began to touch her. Chavez told H.C. to go upstairs to her bedroom, he followed and there engaged in vaginal intercourse with H.C.

{¶16} H.C. testified to a third incident during which she and her father were in the downstairs bathroom in their house on Gerald Avenue. H.C. stated that her father positioned her hands and knees on the toilet and then had vaginal intercourse with her. Lastly, H.C. testified that the first time she performed oral sex on her father, he had called her into his room on Wainstead Avenue and she performed oral sex while her sister, M.C. was present.

{¶17} Chavez presented no witnesses on his behalf and, pursuant to a Crim.R. 29 motion for acquittal, the court dismissed Counts 8, 19, 20, 21 and 29. The trial court found Chavez guilty of all remaining charges except Counts 13, 14 (rape of H.C. by use of an intoxicant) and 16 (rape of M.C. by use of an intoxicant). Prior to sentencing, the court merged Counts 1 and 2, 4 and 5, 6 and 7, 11 and 12, 17 and 18, 22 and 23, 24 and 25, 26 and 27, 28 and 30, 31 and 32, 33 and 34 and 35 and 36 which represent the charges of rape and the corresponding charges of kidnapping for each incident of sexual abuse. The state elected to proceed with sentencing on the charges of rape for all the above-merged convictions. The trial court sentenced Chavez to 18 months in prison on Count 3; 11 years on Counts 10 and 11; life with parole eligibility after 25 years on

Counts 1, 15, 17, 24, 26 and 35 and life without the possibility of parole on Counts 4, 6

and 22. The trial court ordered the sentences for Counts 1, 3, 10, 11 and 15 to run

consecutive for an aggregate sentence of life without the possibility of parole.

{¶18} Chavez appeals, raising the following assignments of error:

Assignment of Error I

The trial court erred in denying the defendant-appellant's motion 29(A) for judgment of acquittal made at the close of [the] State's evidence.

Assignment of Error II

Defendant-Appellant's convictions for rape, kidnapping and disseminating matter harmful to juveniles are against the manifest weight of the evidence and contrary to law.

Assignment of Error III

The trial court erred by not appointing new counsel after defendant-appellant requested new counsel during trial and filed a motion for new counsel prior to the start of trial.

Assignment of Error IV

The trial court erred by sentencing defendant-appellant to multiple consecutive sentences [and] in failing to state the necessary findings to comply with sentencing.

{¶19} In his first and second assignments of error, Chavez argues the state

failed to support his convictions with sufficient evidence and that his convictions were

against the manifest weight of the evidence. In putting forth these assigned errors,

Chavez limits his analysis to the charges of kidnapping and disseminating matter harmful

to juveniles. Chavez mentions the convictions for rape in passing and without any

analysis or legal support and failed to challenge the specifications on any charge.

App.R. 12(A) allows an appellate court to disregard an assigned error if the party raising the error fails to identify in the record the error on which the assignment is based as required by App.R. 16(A).   Further, it is not the duty of an appellate court to search the record for evidence to support an appellant's argument as to any alleged error.   *Capital One Bank N.A. v. Calhoun*, 8th Dist. Cuyahoga No. 98743, 2013-Ohio-274.   "If an argument exists that can support this assigned error, it is not this court's duty to root it out."   *Cardone v. Cardone*, 9th Dist. Summit Nos. 18349 and 18673, 1998 Ohio App. LEXIS 2028 (May 6, 1998).

{¶20}   Accordingly, we shall address Chavez's first two assignments of error only as they relate to the charges of kidnapping and disseminating matter harmful to juveniles.

{¶21}   The standard of review with regard to the sufficiency of the evidence is set forth in *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), as follows:

> Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.

{¶22}   *Bridgeman* must be interpreted in light of the sufficiency test outlined in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, in which the Ohio Supreme Court held:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence submitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.   The relevant inquiry is whether, after viewing the evidence in a

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Citation omitted.)

{¶23} In evaluating a challenge based on manifest weight of the evidence, a court sits as the thirteenth juror, and intrudes its judgment into proceedings that it finds to be fatally flawed through misrepresentation or misapplication of the evidence by a jury that has "lost its way." *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. As the Ohio Supreme Court declared:

> Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief."
>
> * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.

*Id*. at 387. (Citations omitted.)

{¶24} This court is mindful that weight of the evidence and the credibility of witnesses are primarily for the trier of fact and a reviewing court must not reverse a verdict where the trier of fact could reasonably conclude from substantial evidence that the state has proven the offense beyond a reasonable doubt. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), at paragraphs one and two of the syllabus. The goal

of the reviewing court is to determine whether the new trial is mandated. A reviewing court should only grant a new trial in the "exceptional case in which the evidence weighs heavily against a conviction." (Citation omitted.) *State v. Lindsey*, 87 Ohio St.3d 479, 2000-Ohio-465, 721 N.E.2d 995.

{¶25} The trial court found Chavez guilty of disseminating matter harmful to juveniles, which, pursuant to R.C. 2907.31(A)(3), is defined as follows:

> No person, with knowledge of its character or content, shall recklessly while in the physical proximity of the juvenile * * * allow any juvenile * * * to review or peruse any material or view any live performance that is harmful to juveniles.

{¶26} The indictment contained a furthermore clause detailing that the material involved was obscene and that the juvenile to whom it was disseminated was under 13 years of age.

{¶27} In support of his case, the state presented the testimony of J.J.C., born August 20, 2011, who testified that sometime after Halloween but before Thanksgiving, 2011, his father called him to his bedroom where his father showed him an internet video of a woman performing oral sex on an adult male. J.J.C. stated that his father asked him to perform the same act as in the video and that he did. In response, Chavez does not attack the credibility of J.J.C.'s testimony. He argues that the police officers found no evidence of pornography on the computers and electronics seized from the home.

{¶28} Nonetheless, J.J.C.'s testimony provides sufficient evidence that Chavez showed J.J.C. obscene material as defined in R.C. 2907.01(E). Chavez's act of calling J.J.C. into his bedroom for the purposes of showing him an internet video of oral sex and

then instructing J.J.C. to perform the act he observed on the video constitutes disseminating matter harmful to juveniles. *See State v. Ferris*, 10th Dist. Franklin No. 98AP-24, 1998 Ohio App. LEXIS 5616 (Nov. 17, 1998). Further, Chavez provides this court with no authority that officers must recover the obscene material in order to support a conviction on the charge of disseminating matter harmful to juveniles.

{¶29} The court also found Chavez guilty of 12 counts of kidnapping, which, pursuant to R.C. 2905.01(A)(4), provides:

> No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person to engage in sexual activity with the victim against the victim's will.

{¶30} We note that the trial court considered the charges of kidnapping and rape to be allied offenses and merged the convictions prior to sentencing. Regardless of merger, however, the state presented the testimony of each of the five children who testified that their father engaged in sexual activity with each of them against their will. The Ohio Supreme Court has recognized that within every forcible rape there is an implicit kidnapping. *State v. Logan*, 60 Ohio St.2d 126, 130, 397 N.E.2d 1345 (1979); *State v. Hubbard*, 8th Dist. Cuyahoga No. 97118, 2012-Ohio-1052. It is clear from the evidence presented by the state that Chavez restrained the liberty of each of his five children for purposes of engaging in sexual activity. Thus, we do find his convictions to be supported by sufficient evidence.

{¶31} Further, we do not find that the trier of fact lost its way in convicting

Chavez of one count of disseminating matter harmful to juveniles and 12 counts of kidnapping. Chavez's five children testified that while they were alone with their father in either his bedroom or a bathroom, he sexually assaulted them. The evidence produced by the state demonstrated that during each sexual assault of his children, Chavez implicitly restrained their liberty. Further, J.J.C. testified that his father showed him an internet video of a woman performing oral sex on a man.

{¶32} Chavez argues that because he did not use force in bringing the children to his bedroom or bathroom for sex, the trier of fact lost its way in convicting him of kidnapping. We disagree. In finding him guilty of kidnapping, the trial court found him guilty of the restraint on the children's liberty during the sexual assault — not on Chavez's movement of the children into his bedroom or bathroom. The trial court specifically rejected the separate animus of kidnapping, which was proffered by the state, in merging the charges of kidnapping with the charges of rape for purposes of sentencing.

{¶33} Accordingly, we find that the trial court did not lose its way in convicting Chavez of disseminating matter harmful to juveniles and kidnapping. Chavez's first and second assignments of error are overruled.

{¶34} In his third assignment of error, Chavez argues the trial court erred when it failed to appoint him new counsel during trial. We disagree.

{¶35} In *State v. Deal*, 17 Ohio St.2d 17, 244 N.E.2d 742 (1969), the Ohio Supreme Court held that when an accused raises a specific complaint regarding his

dissatisfaction with counsel during the course of the trial, the trial court has an obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. "The right to counsel is important enough that in a situation such as this a reviewing court should have sufficient information in the record to determine whether a claim of inadequate counsel is justified." Once a defendant makes the requisite showing, the trial court's failure to appoint new counsel "amounts to a denial of effective assistance of counsel." *State v. Pruitt*, 18 Ohio App.3d 50, 57, 480 N.E.2d 499 (8th Dist.1984). *State v. Moore*, 8th Dist. Cuyahoga No. 95106, 2012-Ohio-1958 (May 3, 2012).

{¶36} "The decision whether or not to remove court appointed counsel and allow substitution of new counsel is addressed to the sound discretion of the trial court, and its decision will not be reversed on appeal absent an abuse of discretion." *Pruitt*. "The term 'abuse of discretion' *** implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 450 N.E.2d 1140 (1983).

{¶37} In the present case, Chavez appeared in court with his counsel on November 14, 2012, and announced to the court that he wanted to fire his trial counsel. The trial court immediately stopped proceedings and inquired of Chavez and his counsel the reason for Chavez's complaint. Initially, the court asked trial counsel about his meetings with the prosecutor during pretrials and his communication with his client. The trial court then asked Chavez why he wanted to fire his counsel. Chavez related

that he did not have faith in his counsel because he did not feel his counsel communicated with him as frequently as he wanted. Chavez also said that his counsel did not take his advice about trial tactics. The trial court explained that his counsel engaged in extensive discovery, met with the prosecutor approximately 14 times for pretrials and attempted to resolve the case with a plea bargain.

{¶38} Additionally, in his brief on appeal, Chavez argues that he generally felt uncomfortable with his trial counsel.

{¶39} "An indigent defendant's right to counsel does not extend to counsel of the defendant's choice." *Thurston v. Maxwell*, 3 Ohio St.2d 92, 93, 209 N.E.2d 204 (1965). Rather, "[t]o discharge a court-appointed attorney, the defendant must show 'a breakdown in the attorney-client relationship of such magnitude as to jeopardize a defendant's right to effective assistance of counsel.'" *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988), quoting *People v. Robles*, 2 Cal.3d 205, 215, 85 Cal.Rptr. 166, 466 P.2d 710 (1970). Further, the accused is not guaranteed a "meaningful relationship" with his counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14, 103 S.Ct. 1610, 75 L.Ed.2d 610 (1983). The fact that an accused disagrees with his attorney regarding trial tactics and strategy is insufficient to warrant the substitution of counsel. *State v. Alexander*, 10th Dist. Franklin Nos. 05AP-192 and 05AP-245, 2006-Ohio-1298.

{¶40} In this case, we note that Chavez failed to set forth grounds to support his request for appointment of new counsel except for his complaint of insufficient communication and a failure to follow his advice. Such a challenge to court-appointed

representation does not constitute a breakdown in the attorney-client relationship that warrants the appointment of new counsel.

{¶41} Regardless of the basis for appellant's complaints, we find that the trial court diligently considered Chavez's concerns and complied with its obligation to ensure that the record contains an adequate investigation of the complaint before continuing with the trial. Upon hearing Chavez's request for dismissal of counsel, the trial court inquired as to Chavez's basis for dismissal and allowed appellant to speak freely in support of his complaint. Once the trial court understood the nature of Chavez's arguments, it explained that attorneys are not required to follow their client's advice, that his attorney was working hard and communicating frequently with the court and the state and that his counsel was a highly qualified, competent and well respected attorney in the community.

{¶42} Thus, the record adequately reflects that the trial court addressed Chavez's concerns on the record and explained that Chavez's issues with his attorney failed to establish any rational form of ineffective assistance of counsel. Under the circumstances of this case, we cannot say the trial court abused its discretion. *See Moore*.

{¶43} Chavez's third assignment of error is overruled.

{¶44} In his fourth and final assignment of error, Chavez argues the trial court failed to comply with the sentencing guidelines of R.C. 2929.14(C). Appellant's arguments about consecutive sentences are moot. Appellant received a life sentence

without the possibility of parole.   It therefore makes no difference if appellant serves that sentence consecutively to additional sentences or concurrently.

{¶45} The Ohio Supreme Court has found moot arguments about the impropriety of consecutive sentences imposed in addition to death sentences. *State v. Scott*, 101 Ohio St.3d 31, 2004-Ohio-10, 800 N.E.2d 1133, ¶ 50, citing *State v. Lynch*, 98 Ohio St.3d 514, 2003-Ohio-2284, 787 N.E.2d 1185, ¶ 142; *State v. Moore*, 81 Ohio St.3d 22, 38, 1998-Ohio-441, 689 N.E.2d 1; *State v. Campbell*, 69 Ohio St.3d 38, 52, 630 N.E.2d 339 (1994).   Other districts have applied the same logic to sentences imposed consecutively to a life sentence without the possibility of parole.   *State v. Davie*, 11th Dist. Trumbull No. 92-T-4693, 1995 Ohio App. LEXIS 6064 (Dec. 27, 1995); *State v. Herring*, 7th Dist. Jefferson No. 00 JE 37, 2002-Ohio-2786, ¶ 34.

{¶46} The legislature also has indicated that such sentences are not reviewable under R.C. 2953.08(C)(1), albeit ineffectually.

{¶47} It is this court's view that R.C. 2953.08(C)(1) limits review of consecutive sentences to situations where the combined consecutive sentence is greater than the maximum sentence for any one conviction.   R.C. 2953.08(C)(1) states, in part:

> [A] defendant who is convicted of or pleads guilty to a felony may seek leave to appeal a sentence imposed upon the defendant on the basis that the sentencing judge has imposed consecutive sentences under division (C)(3) of section 2929.14 of the Revised Code and that the consecutive sentences exceed the maximum prison term allowed by division (A) of that section for the most serious offense of which the defendant was convicted.[1]

---

[1] This right is in addition to the rights of appeal bestowed by R.C. 2953.08(A) and 2953.08(B), but we believe the more specific statute should control rather than an appeal generally asserting

The statute does not refer to R.C. 2929.14(C)(4), Ohio's consecutive sentencing provision, but to R.C. 2929.14(C)(3), a subsection mandating consecutive sentences for a small number of gun-related offenses and for evading police in a motor vehicle chase. This court believes this to be a clerical error in the statute. If it is interpreted as such, this court's time would not be wasted reviewing consecutive sentencing decisions that have no practical legal significance. Imposing additional consecutive sentences to a life-without-parole sentence has a social goal of sending a message to offenders and the public that abhorrent behavior will be severely punished, but has no legal significance outside of academic rhetoric. The defendant can only be subjected to living out his or her life in prison once. Arguments about sentences imposed consecutively to life-without-parole are moot. The statute, as this court believes the legislature intended it to be written, recognizes that fact.[2]

{¶48} R.C. 2953.08(C)(1) is not clearly erroneous as written. The reference to R.C. 2929.14(C)(3) is arguably compatible with the rest of the subsection. Therefore, R.C. 2953.08(C) does not outright preclude review in this case. The arguments

---

that the sentence is contrary to law under R.C. 2953.08(A)(4) because the court did not make the appropriate findings under R.C. 2929.14(C)(4). Otherwise, R.C. 2953.08(C)(1) would have no application.

[2] The statute obviously applies to more than just sentences imposed consecutively to life-without-parole sentences. A trial court does not have to state reasons or make findings to impose a maximum sentence. Therefore, any combination of consecutive sentences that are no greater than the possible maximum sentence for the most serious offense may not involve considerations beyond the purposes and principles of felony sentencing found in R.C. 2929.11 and 2929.12 had the court simply imposed concurrent higher sentences for each conviction.

appellant raises are still moot, and thus, Chavez's fourth and final assignment of error is overruled.

{¶49} The judgment of the trial court is affirmed.

It is ordered that appellee recover from the appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. The case is remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
PATRICIA ANN BLACKMON, J., CONCUR