[Cite as *State v. Herrington* , 2018-Ohio-3049.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 106225**

---

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**FRANK L. HERRINGTON**

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-611188-A

**BEFORE:** Keough, J., Stewart, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** August 2, 2018

**ATTORNEYS FOR APPELLANT**

Mark Stanton
Cuyahoga County Public Defender
By: Jeffrey Gamso
        Noelle A. Powell
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
By: Melissa Riley
        Daniel Van
Assistant County Prosecutors
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, J.:

{¶1} Defendant-appellant, Frank Herrington, appeals his convictions for rape and kidnapping. For the reasons that follow, we affirm.

{¶2} On November 9, 2016, Herrington was named in a four-count indictment charging him with two counts of rape, and one count each of complicity to commit rape and kidnapping. The case was tried to the bench and the following evidence was presented.

{¶3} In the late evening of November 15, 1996, the victim, who was nine-months pregnant, left her sister's house after a cookout and walked to a nearby bus stop. A small blue car pulled up next to her and the driver offered her a ride home, which she accepted. When she got into the car, another male exited from the back of the vehicle and got into the front seat with her. The men drove her to a location and took turns vaginally and orally raping her. The victim testified that she believed the male passenger had a gun and she feared for her and her unborn child's safety. She escaped from the men only after pretending that she needed to use the bathroom. Naked, she ran to a nearby retirement home and the security guard called the police. She was taken to the hospital where she received medical treatment for her pregnancy and a rape kit examination was performed. The victim admitted that both alcohol and cocaine were in her system on this date. Days later she gave birth to her child.

{¶4} The case was referred to the Cleveland Sex Crimes Division. Despite the presence of the rape kit, when the victim failed to provide police with any additional information, the case was closed.

{¶5} Approximately 17 years later, in April 2013, the victim's rape kit was finally tested. A CODIS hit revealed that one of the genital swabs taken from the victim contained DNA

consistent with Herrington. Emily Feldenkris, forensic scientist with the Ohio Bureau of Criminal Investigation, testified that the genital swab revealed multiple contributors, with Herrington being an identifiable contributor. Feldenkris testified that she would expect to find the major DNA profile in the sperm fraction of the profile that was consistent with Herrington in one in every 30,000 unrelated individuals. Additionally, she testified that DNA from additional contributors, with as many as up to four, were discovered from swabs taken from the victim's underwear.

{¶6} Following the CODIS hit, the victim was shown a photo array. She was unable to identify her attackers, but she selected a male as looking "familiar" to her. The victim did not identify Herrington in the array, but she testified that she did not have consensual sex in November 1996 with any of the males in the photo array.

{¶7} Herrington testified on his own behalf, denying that he raped the victim. He stated that he has never raped anyone and did not remember having sex with a nine-month pregnant woman. Herrington admitted that in 1996 he was a drug user and engaged in sexual relations with different women. He further testified that he hired prostitutes and would pay them for sexual activity with drugs.

{¶8} The trial court found Herrington guilty of all counts and sentenced him to a total of seven years in prison, to be served consecutively to the life-without-parole sentence he was already serving on an unrelated aggravated murder conviction.

{¶9} Herrington now appeals, raising five assignments of error, which will be addressed out of order.

## I. Preindictment Delay

{¶10} Prior to trial, Herrington moved to dismiss the case for preindictment delay contending that he suffered actual prejudice because alleged evidence and witnesses were no longer available. Following oral arguments, the trial court denied the motion, finding that Herrington did not satisfy his burden of establishing actual prejudice because the alleged unavailable evidence and witnesses were only based on speculation. In his first assignment of error, Herrington contends that the trial court erred in denying his motion to dismiss for preindictment delay.

{¶11} "In reviewing a trial court's decision on a motion to dismiss for preindictment delay, we apply a de novo standard of review to the legal issues but afford great deference to findings of fact made by the trial judge." *State v. Tate*, 2016-Ohio-5622, 70 N.E.3d 1056, ¶ 18 (8th Dist.), citing *State v. Smith*, 8th Dist. Cuyahoga No. 100501, 2014-Ohio-3034, ¶ 23.

{¶12} Preindictment delay violates due process only when it is unjustifiable and causes actual prejudice. *State v. Jones*, 148 Ohio St.3d 167, 2016-Ohio-5105, 69 N.E.3d 688, ¶ 12. The Ohio Supreme Court has established a burden-shifting framework for analyzing preindictment delay due process claims. *State v. Whiting*, 84 Ohio St.3d 215, 217, 702 N.E.2d 1199 (1998). Under this framework, a defendant is first required to present evidence of actual prejudice; if actual prejudice is established, the burden shifts to the state to produce evidence of a justifiable reason for the delay. *Id.*

{¶13} "Actual prejudice exists when missing evidence or unavailable testimony, identified by the defendant and relevant to the defense, would minimize or eliminate the impact of the state's evidence and bolster the defense." *Jones* at ¶ 28, citing *State v. Luck*, 15 Ohio St.3d 150, 157-158, 472 N.E.2d 1097 (1984). "[T]he determination of 'actual prejudice' involves 'a delicate judgment based on the circumstances of each case.'" *State v. Walls*, 96

Ohio St.3d 437, 2002-Ohio-5059, 775 N.E.2d 829, ¶ 52, citing *United States v. Marion*, 404 U.S. 307, 326, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The mere "possibility that memories will fade, witnesses will become inaccessible, or evidence will be lost is not sufficient to establish actual prejudice," because those are manifestations of the prejudice inherent in any delay. *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 105, citing *Marion* at 326. An actual prejudice analysis requires courts to undertake a case-by-case consideration of the relevance of the lost evidence and its purported effect on the defense. *Id*., citing *Walls* at ¶ 52.

{¶14} Herrington argued in his motion to dismiss that he suffered actual prejudice because (1) phone records were unavailable that could prove any encounter was consensual, and (2) witnesses were unavailable to corroborate the theory that he and the victim were frequent drug users who would exchange drugs for sex. On appeal, however, Herrington contends that he suffered actual prejudice because the passage of time denied him the ability to challenge the victim's credibility with other acts evidence that was, at the time of trial, beyond the time allowed under the rules of evidence and therefore inadmissible.

{¶15} It is well settled that an appellant may not raise on appeal a new argument that was not raised in the trial court. *In re J.M.P.*, 4th Dist. Vinton No. 16CA702, 2017-Ohio-8126, ¶ 7, citing *Independence v. Office of the Cuyahoga Cty. Executive*, 142 Ohio St.3d 125, 2014-Ohio-4650, 28 N.E.3d 1182, ¶ 30; *see also Revilo Tyluka, LLC v. Simon Roofing & Sheet Metal Corp*., 193 Ohio App.3d 535, 2011-Ohio-1922, 952 N.E.2d 1181, ¶ 23-26 (8th Dist.) (a party cannot change the theory of the case and present new arguments on appeal). Accordingly, Herrington's new argument regarding other acts evidence will not be addressed.[1]

---

[1]Arguments regarding the victim's prior criminal record were made in the context of the state's motion in limine regarding whether that evidence is protected under Ohio's rape shield law. No assignment of error has been raised challenging the trial court's decision excluding the victim's prior criminal record.

{¶16} In this case, the trial court did not err in overruling Herrington's motion to dismiss for preindictment delay. The motion was premised on speculation that phone records and witnesses may have been available to prove the encounter was consensual. This type of speculation is insufficient for Herrington to satisfy his burden of demonstrating actual prejudice. The requisite proof "must be specific, particularized, and non-speculative." *State v. Hubbard*, 12th Dist. Butler No. CA92-03-058, 1992 Ohio App. LEXIS 5784, *4 (Nov. 16, 1992), citing *United States v. Moran*, 759 F.2d 777 (9th Cir.1985); *State v. Battiste*, 8th Dist. Cuyahoga No. 102299, 2015-Ohio-3586, ¶ 48. Moreover, Herrington offered a complete defense of actual innocence at trial, testifying that he did not rape the victim or remember engaging in sexual conduct with anyone nine-months pregnant. His theory of the case and testimony negates the argument that the encounter was consensual, thus obviating the need for the alleged unavailable evidence.

{¶17} Because Herrington did not demonstrate actual prejudice, the trial court did not err in denying his motion to dismiss for preindictment delay. The first assignment of error is overruled.

## II. Manifest Weight of the Evidence

{¶18} In his third assignment of error, Herrington contends that his convictions are against the manifest weight of the evidence.

{¶19} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the

conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶20} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶21} Herrington contends that his convictions are against the manifest weight of the evidence because the victim's testimony was not credible and the forensic evidence indicated that up to four individual DNA profiles were discovered on the victim's undergarments. Therefore, he maintains that it was more plausible that the victim was engaging in prostitution, which explains how the circumstances of the rape occurred. Herrington does not discount her allegation of rape, but contends that a conclusion that he was the person who raped the victim is against the manifest weight of the evidence. We disagree.

{¶22} The victim testified that she accepted a ride from an unknown male during the late hours of November 15, 1996. When she got into the car, another male exited from the back of

the vehicle and got into the front seat. She testified that she felt what she believed to be a gun in her back. The men drove her to an unknown area, forced her to take her clothes off, and took turns vaginally and orally raping her. She was able to escape by telling the men that she needed to use the bathroom. As she ran from the car, the men drove away, throwing her clothes out of the car. Detective Andrew Ziska testified that he retrieved some of the victim's clothing from the Judson Park area.

{¶23} The sole evidence against Herrington was forensic DNA evidence demonstrating that he was a contributor in a DNA mixture profile found on a genital swabbing from the victim. Feldenkris testified that additional data was present from that swabbing, but that it was insufficient for comparison. The presence of this additional data is consistent with the victim's testimony that two unknown men took turns raping her that night.

{¶24} Significantly, the DNA profile that was consistent with Herrington's was the major DNA profile in the sperm fraction as opposed to the fraction of cells that contains every other cell on the sample. Feldenkris testified that she would expect to find the major DNA profile in the sperm fraction of that profile that was consistent with Herrington in one in every 30,000 unrelated individuals. (Tr. 164.)

{¶25} Additionally, Feldenkris testified that the victim's clothes were tested. The DNA profile obtained from the victim's underwear and a sock showed the presence of an additional male DNA, but was not suitable for comparison. She stated that because the additional data was not suitable for comparison, she could not make any conclusions about whether Herrington was the contributor to that DNA profile. (Tr. 163.)

{¶26} The presence of Herrington's DNA profile creates a reasonable inference, if not more, that Herrington engaged in sexual conduct with the victim. This would be contradictory

to his complete defense that he never had sexual contact with the victim. Accordingly, the trial court had to weigh his testimony against the testimony and evidence that the DNA profile obtained was consistent with Herrington's DNA profile. We find no manifest injustice in the trial court finding him guilty.

{¶27} Based on the DNA evidence linking Herrington to the rape and the presence of additional data that would support the victim's account that another male also sexually assaulted her, this is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶28} Accordingly, Herrington's third assignment of error is overruled.

### III. Effective Assistance of Counsel — DNA Expert

{¶29} In his second assignment of error, Herrington contends that he was denied effective assistance of counsel because counsel did not obtain or consult with an independent expert to evaluate the DNA evidence obtained.

{¶30} To establish ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance fell below an objective standard of reasonable representation and (2) that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. The failure to prove either prong of the *Strickland* two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶31} Generally, the decision whether to call a witness "falls within the rubric of trial strategy and will not be second-guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d

460, 490, 739 N.E.2d 749 (2001); *see also State v. Williams*, 74 Ohio App.3d 686, 694, 600 N.E.2d 298 (8th Dist.1991). Furthermore, the failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel. *State v. Nicholas*, 66 Ohio St.3d 431, 436, 613 N.E.2d 225 (1993). "In many criminal cases, trial counsel's decision to not seek expert testimony is unquestionably tactical because such expert might uncover evidence that further inculpates the defendant." *State v. Krzywkowski*, 8th Dist. Cuyahoga Nos. 83599, 83842, and 84056, 2004-Ohio-599, ¶ 22, quoting *State v. Glover*, 12th Dist. Clermont No. CA2001-12-1-2, 2002-Ohio-6392, ¶ 95. The failure to call an expert and instead rely on cross-examination does not necessarily constitute ineffective assistance of counsel because it is a legitimate trial strategy for defense counsel not to present expert testimony and rely on cross-examination of a state's expert to rebut evidence of a crime. *Id.*

{¶32} Our review of the record reveals that defense counsel thoroughly cross-examined Feldenkris about the DNA testing, the control failure that occurred during the testing, and the comparable relatively low probability that the DNA profile actually belonged to Herrington — 1 in 30,000 as opposed to one in a quintillion. Based on defense counsel's performance, the trial court was able to view these results and determine the amount of weight to be given to the testimony and results.

{¶33} Accordingly, Herrington has failed to demonstrate that his defense counsel's performance was deficient. His second assignment of error is overruled.

## IV. Consecutive Sentences

{¶34} In his fourth and fifth assignments of error, Herrington challenges the imposition of consecutive sentences. He first contends that the record does not clearly and convincingly support the trial court's consecutive sentence findings. Specifically, he contends that it was

irrational for the trial court to find that consecutive sentences are necessary to protect the public because he was already serving a life-without-parole sentence.

**{¶35}** This court had held that sentences imposed consecutively to life-without-parole sentences are moot because the issue is "academic" — this court can issue no decision that will have any practical effect on the controversy. *State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, ¶ 47.

**{¶36}** Herrington recognizes this court's precedent in *Chavez*, but maintains that review of the sentence is proper pursuant to *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, which held that it was proper for an appellate court to review whether life sentences were properly made consecutive. However, this court rejected the same argument in *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613. In *Campbell*, this court noted that the sentences in *Porterfield* — consecutive 20-year-to-life sentences — "did not necessarily foreclose the possibility, even if remote, of Porterfield serving those sentences and being paroled during his life." *Id*. at ¶ 11. A sentence of life without the possibility of parole, however, forecloses the possibility of parole because the "life sentence will be completed upon [the defendant's] death. When that occurs, the sentences that were ordered to be served consecutive to the life sentence will terminate." *Id*.

**{¶37}** Accordingly, because Herrington is serving a life-without-parole sentence, any challenge in this case to the consecutive nature of his sentence is moot. Herrington's fourth assignment of error is overruled.

**{¶38}** Herrington also claims that his counsel was ineffective because counsel raised the prospect of the trial court imposing consecutive sentences. The record reflects the following colloquy:

[DEFENSE COUNSEL]: Judge, that seven year concurrent sentence within 611188, is that also concurrent with his –

THE COURT: No, that's consecutive.

[DEFENSE COUNSEL]: Consecutive. Certainly we'd object to that. To the 346 –

THE COURT: To his old case.

[DEFENSE COUNSEL]: Yes, the aggravated murder.

THE COURT: All right. Thank you. But it is to be served consecutive to the time imposed on the offenses he's already serving time for.

**{¶39}** Herrington contends that the trial court ordered his time consecutive only after his defense counsel raised the issue. He maintains that if his counsel would have remained silent, the court would have imposed concurrent sentences. Notwithstanding that a challenge to the consecutive nature of his sentence is moot, this assertion is mere speculation. Moreover, the record demonstrates that defense counsel objected to the trial court's imposition of consecutive sentences on multiple occasions. Accordingly, defense counsel was not ineffective and Herrington's fifth assignment of error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KATHLEEN ANN KEOUGH, JUDGE

MELODY J. STEWART, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR