[Cite as *State v. Howell*, 2019-Ohio-3182.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO, :

    Plaintiff-Appellee, :

                               No. 107545

    v. :

SLATTER HOWELL, III, :

    Defendant-Appellant. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** August 8, 2019

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-16-603024-A and CR-16-606767-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecutor, and Daniel A. Cleary, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, Robert B. McCaleb and Jeffrey M. Gamso, Assistant Public Defenders, *for appellant.*

PATRICIA ANN BLACKMON, J.:

{¶ 1} Defendant-appellant, Slatter Howell, III, appeals from his convictions for aggravated murder, aggravated robbery, and other offenses in

Cuyahoga C.P. No. CR-16-603024-A and his conviction for felonious assault in Cuyahoga C.P. No. CR-16-606767-A. He assigns the following errors for our review:

I.    Mr. Howell was denied his constitutional right to the effective assistance of counsel when, after being accused of witness tampering and attempting to suborn perjury, his attorneys simply declared their innocence rather than asking the trial court to make findings and demanding a mistrial.

II.   The trial court's comments bolstering the credibility of the government's DNA "expert" prejudiced Mr. Howell's defense.

III.  The trial court committed error when it imposed consecutive sentences because its finding that consecutive sentences were necessary to protect the public is altogether unsupportable and irrational.

{¶ 2}   Having reviewed the record and the controlling law, we affirm.

{¶ 3}   Howell was charged in a five-count indictment in Cuyahoga C.P. No. CR-16-606767-A in connection with an attack on Joe Houston on May 1, 2014. On October 11, 2017, Howell pled guilty to one count of felonious assault and was sentenced to eight years imprisonment.

{¶ 4}   Howell was also indicted in Cuyahoga C.P. No. CR-16-603024-A for two homicides and related offenses. Counts 1 through 8 arose from the April 7, 2014 shooting death of gas station worker Babul Saha ("Saha"), and the indictment charged Howell with two counts each of aggravated murder, felonious assault, and aggravated robbery, and one count each of murder and robbery. The charges also included repeat violent offender specifications, a notice of prior conviction, and one- and three-year firearm specifications. Counts 9 through 14 arose from the May 1, 2014 shooting death of Theodore Wright ("Wright") and the indictment charged

Howell with aggravated murder, murder, aggravated robbery, robbery, felonious assault, and tampering with evidence. The parties agreed that the state would proceed to trial first on the offenses pertaining to Saha, and the jury trial for these offenses began on September 5, 2017. The notice of prior conviction and repeat violent offender specifications were tried to the court.

{¶ 5} The state's evidence demonstrated that on the night of April 7, 2014, Saha was working alone behind the counter at the Prime Station on Granger Road in Maple Heights. According to customer Bruce Tyus ("Tyus"), a man in a gray hooded sweatshirt with the hood pulled tightly over his head approached him at the pumps and asked how many people were inside the store. Tyus replied that one or two people were inside. The man walked inside and shortly after that, Tyus heard gunshots.

{¶ 6} Dennis Hanson ("Hanson") testified that around 10:30 p.m., he had stopped at a traffic light near the Prime Station and observed three individuals in hooded sweatshirts repeatedly crossing Granger Road at Milo Avenue. After the shooting, Hanson reviewed police photos and identified three people as "possibly" involved, but he was unsure if Howell was among these individuals.

{¶ 7} Customer Sam Killings ("Killings") went into the store and waited for service. After a few minutes, he looked behind the counter and observed the clerk on the floor "with his eyes rolling in the back of his head." One of the cash register drawers was opened.

{¶ 8} Saha died from his injuries. According to Cuyahoga County Deputy Medical Examiner Dr. Joseph Felo ("Dr. Felo"), Saha sustained a gunshot wound to his torso that perforated his aorta and caused him to bleed to death.

{¶ 9} Maple Heights Detective Andrew Sperie ("Det. Sperie") testified that he collected a white plastic bag from the floor of the Prime Station office and marked it as item no. 3 on the police evidence log. Det. Sperie checked out a number of leads, and subsequently received a tip through Crime Stoppers claiming that Howell was the assailant.

{¶ 10} Cuyahoga County Regional Forensics Science Laboratory ("CCRFSL") Analyst Carey Baucher ("Baucher") testified that initial DNA analysis of the white plastic bag revealed a mixture from more than three unidentified individuals. Because of the number of contributors, the white plastic bag recovered at the crime scene was sent to Cybergenetics Laboratory ("Cybergenetics") that utilizes the True Allele computer program to perform the calculations for genotyping mixed contributor samples. Baucher was cross-examined at length about the reliability of True Allele given its source code, and she repeatedly indicated that she is not a computer programmer and did not perform the genotyping of the mixed contributor samples. However, Baucher stated that "the program is reliable when we set up certain experiments and certain mixtures that we know what goes into these and what the results should be, and it has come out perfect every time."

{¶ 11} Jennifer Hornyak ("Hornyak") of Cybergenetics, stated that True Allele is the subject of 34 validation studies, one of which was completed by the

CCRFSL.  The True Allele software considers the distribution of gene allele pair values and works out all of the different genotype combinations with their associated probabilities in order to derive match statistics.  According to Hornyak, the sample from the white plastic bag had degraded overall, but there was a match between it and Howell that is 98 thousand times more probable than a coincidental match to an unrelated African-American person.  The match between the white plastic bag and Saha is 224 thousand times more probable than coincidence.

{¶ 12} Hornyak also testified that the source code for True Allele is a proprietary trade secret, but is available to defense experts who sign confidentiality agreements.  Defense experts are also invited to create a mixed contributor DNA sample of six individuals in order to test True Allele's accuracy.  In this case, Cybergenetics provided the defense with the validation studies, tutorials, and software needed to view the source code as well as the supporting case files.

{¶ 13} Monique Tatum ("Tatum"), Howell's former girlfriend, testified that after she and Howell broke up, she posted news footage of Saha's assailant on her Facebook page.  She also posted a private message to "Gutta Boii," the name of a Facebook account used by Howell and others.  The next day, Howell shot at Tatum.  It is undisputed that Howell pled guilty to attempted felonious assault with a three-year firearm specification in Cuyahoga C.P. No. CR-14-586451-A, in connection with the attack on Tatum and was sentenced to five years of imprisonment.

{¶ 14} Tatum gave a statement to police outlining that after Saha was killed, Howell refused to go into the Prime Station.  According to Tatum's statement,

Howell went to the station with "Maine" and "Ken," and he committed the crime in order to show that he was ready to join the Heartless Felons. Howell reportedly insisted that he had obtained several thousand dollars from the robbery and not $50 as stated in news reports. Tatum also told police that the clothing worn by the assailant was similar to clothing that Howell owns.

{¶ 15} Rufus Harris ("Harris") testified that Howell was his cell mate at Lorain Correctional Institution. Howell experienced nightmares and confided to Harris that he and his friend Maine wanted to commit a robbery, so they drove around and ended up at the Prime Station. They parked across the street. After learning that no customers were inside, Howell reportedly approached with his hood tied tightly around his face. The clerk jumped up to lock the bulletproof door, and Howell shot him in the chest with a .38 caliber weapon. Harris also stated that Howell hurt his leg while jumping over the counter to get to the cash register. Although the police believed that Howell dropped a glove at the crime scene, he denied that he had done so.

{¶ 16} Harris admitted that in exchange for this information, he did not have to serve the final six months of his sentence. Harris denied that he learned the details of the crime from television reports or reading a letter to Howell in which one of his friends, Kenneth Pinkney ("Pinkney"), threatened to blame the Prime Station shooting on Howell unless Howell told police that he owned a weapon found in Pinkney's possession.

{¶ 17} Howell testified on his own behalf. He stated that he receives money from a wrongful death action, and he denied robbing and shooting Saha. Howell also denied confessing the crime to Tatum and Harris. Howell asserted that Tatum fabricated her claims due to romantic jealousy and frustration at not getting money from him. Howell maintained that he and Harris were housed together only for several days and stopped sharing a cell after he caught Harris going through his mail. Howell testified that "Maine," or Kwamaine Davis ("Davis"), killed Saha. Howell indicated that he was being framed by Tatum, with the help of the police, for refusing to join the Heartless Felons.

{¶ 18} The jury subsequently convicted Howell of all eight charges pertaining to the Saha shooting. With regard to the remaining charges pertaining to the Wright shooting, Howell subsequently pled guilty to robbery and involuntary manslaughter with a three-year firearm specification.

{¶ 19} After merger of allied offenses, the trial court sentenced Howell to life imprisonment without the possibility of parole for the aggravated murder of Saha, eleven years for the aggravated robbery of Saha, eleven years for the involuntary manslaughter of Wright, and eight years for the robbery of Wright. The court ordered all terms to be served consecutively, and consecutively to the eight-year term imposed for felonious assault on Houston in Cuyahoga C.P. No. CR-16-606767-A. The court also imposed fines totaling $60,000.

**Ineffective Assistance of Counsel**

{¶ 20} In the first assigned error, Howell complains that his trial attorneys were ineffective in response to Tatum's claim that Howell and his lawyers were "contacting me [saying] don't show up to court. * * * They said come and rewrite my statement and Slater have $500 to give me if I do." Howell complains that trial counsel denied Tatum's allegations but did not request factual findings or seek a mistrial.

{¶ 21} In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that (1) his counsel was deficient in some aspect of his representation, and (2) there is a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Id.* at 689. There is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 289, 1999-Ohio-102, 714 N.E.2d 905. To justify a finding of ineffective assistance of counsel, the appellant must overcome a strong presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland* at 689. Tactical or strategic trial decisions, even if ultimately unsuccessful, generally do not constitute ineffective assistance of counsel. *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995).

{¶ 22} In this assigned error, we note that Tatum's claims were made out of the presence of the jury, and trial counsel informed the court that they did not contact Tatum, did not have her phone number, and her claims were "100 percent false [and] totally ridiculous." Counsel's response was consistent with their overall strategy of portraying Tatum as a perjurer, and they stated that this was "another example of her perjuring herself as she did all throughout her testimony," that she "came in here today and much of what she said was demonstrably false," and that she "did demonstrate some falsity in her testimony." Further, the record indicates that Tatum claimed to have information about other charged and uncharged offenses that Howell allegedly committed. With this in mind, and after reviewing the entire record, we conclude that counsel could have reasonably determined that further pursuit of Tatum's "rewrite my statement" claims would not have aided the defense, and they made a sound tactical decision by simply issuing strong denials of the claims. *State v. Cody*, 8th Dist. Cuyahoga No. 77427, 2002-Ohio-7055, ¶ 63 (counsel not ineffective for failing to request a mistrial and failing to present evidence challenging juror-tampering allegation); *State v. Rodano*, 8th Dist. Cuyahoga No. 57185, 1990 Ohio App. LEXIS 2857 (July 12, 1990) (counsel not ineffective for failing to object to characterization of appellant's affidavit as "nothing but perjury"); *State v. Bolen*, 3d Dist. Hancock No. 5-01-25, 2002 Ohio App. LEXIS 767 (Feb. 22, 2002) (counsel not ineffective for failing to object to claim of witness intimidation).

{¶ 23} Therefore, we conclude that the first assigned error is without merit.

**Court Bolstering of Witness**

{¶ 24} In the second assigned error, Howell asserts that the trial court improperly bolstered the testimony of the state's DNA witness who testified that she found True Allele reliable when the court remarked, "[s]ustained for a couple reasons. First of all, it's speculative, and number two, she's not a computer expert. * * * And I think the analogy she created about us using Google and not having the source code is a good one." In opposition, the state notes that Howell inaccurately claims that this exchange occurred during the cross-examination of Hornyak, an analyst from Cybergenetics, when, in fact, it occurred during the cross-examination of Baucher from the CCRFSL, who had nothing to do with the development of True Allele technology. The state maintains that this is an important clarification because the line of cross-examination referenced "coding errors" in True Allele that Baucher could not address.

{¶ 25} In presiding over a trial, a judge must be cognizant of the effect of his or her remarks upon the jury. *State v. Wade*, 53 Ohio St.2d 182, 187, 373 N.E.2d 1244 (1978). An appellate court reviewing the propriety of a judge's remarks before a jury must determine whether the comments were prejudicial to a defendant's right to a fair trial. *Id.* at 188. The *Wade* court adopted the following rules for evaluating a judge's comments:

> (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be

given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel.

*Id.*

{¶ 26} As to the issue of prejudice, we note that ultimately, Howell maintained that he was being framed for the Saha murder, and his testimony concludes with the following exchange:

Q. But your bag with your DNA is in it, right? Degraded or not, Mr. Howell, it's in there, right?

A. Yes, it is.

{¶ 27} Also as to prejudice, the defense initially challenged True Allele as unreliable, but later withdrew that challenge. Although the defense discussed reliability again on the eve of trial, they conceded that Howell did not authorize them to raise that challenge, so the court did not hold an admissibility hearing under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The trial court also noted that True Allele had been accepted in *State v. Shaw*, Cuyahoga C.P. No. CR-13-575691 (Oct. 10, 2014). *See also State v. Mathis*, Cuyahoga C.P. No. CR-16-611539-A (Apr. 13, 2018). Moreover, nothing in the record suggests that True Allele is unreliable.

{¶ 28} As to the circumstances surrounding this testimony, this line of cross-examination inappropriately raised the issue of "coding errors" at Cybergenetics with Baucher who works at CCRFSL and is not a computer analyst. In response to defense questioning, Baucher responded that she does "not need to know the lines of code to know that the program is reliable when we set up certain experiments and

certain mixtures that we know what goes into these and what the results should be, and it has come out perfect every time." Offering an analogy, she said, "You don't have the source code to Microsoft Word or Excel, but you use that quite often."

{¶ 29} Applying all of the foregoing, we find that the comments were not prejudicial to Howell's right to a fair trial. This assigned error lacks merit.

**Consecutive Sentences**

{¶ 30} Howell next asserts that because the trial court sentenced him to life imprisonment without the possibility of parole for the aggravated murder of Saha, it was error to impose additional consecutive sentences for the aggravated robbery of Saha, the involuntary manslaughter and robbery of Wright, and the felonious assault on Houston. He argues that additional consecutive sentences are not necessary to protect the public or to punish the offender.

{¶ 31} Howell recognizes that in *State v. Chavez*, 8th Dist. Cuyahoga No. 99436, 2013-Ohio-4700, this court had held that sentences imposed consecutively to life-without-parole sentences are moot because the issue is "academic" — this court can issue no decision that will have any practical effect on the controversy. *Id.* at ¶ 47. He argues that review of the sentence is authorized under *State v. Porterfield*, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, because the court held that it was proper for an appellate court to review whether life sentences were properly made consecutive. However, this court rejected the same argument in *State v. Herrington*, 8th Dist. Cuyahoga No. 106225, 2018-Ohio-3049, ¶ 35-37, and *State v. Campbell*, 8th Dist. Cuyahoga No. 103982, 2016-Ohio-7613, ¶ 11. *Accord*

*State v. Austin*, 7th Dist. Mahoning No. 16 MA 0068, 2019-Ohio-1185, ¶ 90-95. Although we acknowledge Howell's interest in preserving the issue for further review, we do not reach a different result herein, and we find Howell's third assigned error moot. In any event, all of the findings required for consecutive sentences were made in this case when the trial court stated:

> THE COURT: These cases are going to be run consecutively for the following reasons. Obviously, there were guns involved. This is necessary to protect the citizens of this community. If this defendant were ever released, I believe his crime wave would begin anew. It's necessary to punish the offender. It is not disproportionate for the harm that he has caused in these three separate shootings. We should note that two of these crimes were committed after the first crime. The third crime was committed after the first two crimes. So no single sentence would adequately reflect the seriousness of this individual's conduct. And obviously as the State of Ohio has delineated on the record * * * this individual's criminal history shows that consecutive terms are needed to protect the public and punish the offender.
>
> And just so we have a complete record, the Court has taken into consideration the following. He has an assault in 2009, Cuyahoga County Juvenile Court, was adjudicated delinquent. A domestic violence in 2009, adjudicated delinquent. A burglary and theft in 2009, adjudicated delinquent. An escape in 2010, adjudicated delinquent. Receiving stolen property in 2010, adjudicated delinquent. Trafficking in drugs, 2010, adjudicated delinquent. Resisting arrest, disorderly conduct, 2011, which was dismissed. Another burglary in 2012 in a theft case, adjudicated delinquent. Noise in a motor vehicle, 2013. Gross sexual imposition, attempted rape, kidnapping, in 2013, he pled guilty to aggravated burglary. He has been to the institution before on a two-year sentence. There are other misdemeanor arrests for playing loud music. Felonious assault was the 2014 case that he did two years on. And then these cases. So, I mean, his behavior has demonstrated that he has been an individual crime wave, you could say.

{¶ 32} In accordance with all of the foregoing, the third assigned error lacks merit.

**{¶ 33}** Judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

**PATRICIA ANN BLACKMON, JUDGE**

**MARY EILEEN KILBANE, A.J., and**
**EILEEN T. GALLAGHER, J., CONCUR**